[No. 1545.]

FRED. OGDEN *v.* THE STATE.

1. MURDER—INDICTMENT—ARREST OF JUDGMENT.—It is not essential to the sufficiency of an indictment for murder that it should allege that the deceased was a reasonable creature in being; and therefore, a motion in arrest of judgment, based upon such ground, was properly overruled.
2. SAME—FACT CASE.—See evidence *held* sufficient to support a verdict for murder of the first degree, with the death penalty.

APPEAL from the District Court of Brazoria. Tried below before the Hon. W. E. Burkhart.

The indictment in this case charged the murder of Henry Roberson, in Brazoria county, on the fifth day of September, 1883. The trial of appellant thereupon resulted in his conviction of murder in the first degree, with the death penalty assessed.

John Barlow was the State's first witness. The substance of his testimony was that he was clerking for Kennedy & Walker on the fifth day of September, 1883, the day on which the killing occurred. The defendant and one Jim Darnell were at that store, and had been there together for about two hours when the homicide took place. Darnell had bought whisky from the witness, and the witness saw him and the defendant drinking, but the defendant did not impress the witness as being drunk. Darnell had a pistol in the store and was flourishing it about, when the defendant told him to give it to the witness; which Darnell did. As Darnell handed the pistol to witness, the defendant remarked: "Take care, or you will shoot yourself; two or three barrels of that pistol are loaded."

A short time after this, Darnell and defendant came to where witness was standing at the counter, and defendant asked witness to give him the pistol, promising to take Darnell and the weapon home. Witness asked Darnell if he should do so, and Darnell answered, "Yes." Witness thereupon gave the pistol to defendant, who put it in his inside vest or coat pocket. He and Darnell then turned and started to leave the store. Just as they reached the door, or a little before, they met the deceased. The defendant forthwith drew the pistol, pointed it at the deceased, and said, "You d—n son of a b—h, I am going to kill you!" The pistol fired and the deceased fell dead.

The defendant started out in a walk, and when he had progressed some fifteen or twenty steps, the witness, stepping to the door, called to him not to go away. He replied that he was not going away. The next the witness saw of him Chatman Roy and others were tying him. The first that witness saw of the deceased, or knew that he was anywhere about the premises, was when he saw the defendant shoot him. The defendant had lived on the Kennedy & Walker place for two years, during which time the witness also lived there. This was the only difficulty the witness had known of the defendant being engaged in.

Flora White was the next witness for the State. She testified that she was at the store of Kennedy & Walker on the fifth day of September, 1883, about an hour or two before the killing of Roberson. Roberson and the defendant were there at the time.

The witness heard the defendant say to the deceased: "You d—n son of a b—h, I will kill you," and saw the defendant snap a pistol at him twice. The defendant and the deceased, at the time, were on the gallery of the store, near the door, and stood about two and a half or three feet apart, the defendant standing somewhat to the side of the deceased. The deceased neither looked around nor spoke. About a half hour before this occurred, the witness heard the defendant say that he "had it in for a d—n son of a b—h." The witness then started home. Within the half of an hour, or perhaps a little longer, witness heard the report of a pistol at the store, and ran down there to see who, if any one, was shot. She found the deceased lying dead near the store door, with a bullet hole through his head.

Mose Scott testified, for the State, that he, the deceased and Mitchel Jackson went to Palo Alto plantation on the fifth of September, 1883; reached there about 12 o'clock, m., and started back about a half or three-quarters of an hour before sundown. Palo Alto is from four to six miles from Kennedy & Walker's store. The deceased rode behind the witness, on witness's horse, from Palo Alto to his, deceased's house, on Kennedy & Walker's place, which house stands about two or three hundred yards from the store. Witness went on to the store, got off his horse, and waited for the deceased, sitting in the meantime on a sack of cotton seed outside the store, until the deceased arrived. When the deceased arrived he sat down by the witness on the sack of seed, and the two proceeded to make a money settlement arising out of business matters between them. Calculation brought the witness out in debt to the deceased in the sum of one dollar and ten cents. Witness paid the deceased one dollar, and then the two together went into the store to change a quarter, to enable the witness to pay the remaining ten cents. Obtaining the change, the witness paid the ten cents to deceased, and the two started to the door, when they met the defendant. Defendant drew a pistol from his hip pocket, pointed it at the deceased, and said: "You d—d son of a b—h, I am going to kill you." The pistol was there and then discharged, and the deceased being shot through the head, fell dead. Defendant then went out at the door. The witness met Flora White about sixty yards from the store, as he was going to the store. She was then going away from the store. She was not at the store at any time that evening, while witness and deceased were there. She may have come up to the store after

the deceased and the witness went inside, but if she did the witness did not know it. Quite a number of persons were at the store at the time.

Mitchel Jackson was the next witness for the State. He corroborated the last witness, testifying substantially as the latter did.

Chatman Roy testified, for the State, that he was at Kennedy & Walker's store in Brazoria county on the fifth day of September 1883, when the killing of the deceased occurred. He saw the defendant at the store with Jim Darnell's pistol. The pistol contained two or three loads. Witness remarked to the defendant that he had better put the pistol up—that it would send some of them to Huntsville yet. Defendant replied: "No, I reckon not; you have a 'pop' yourself." The witness denied having a pistol, and told defendant that his fist was the only weapon he cared about carrying. Witness then went into the store, got some money which he took home, and then returned to the store. While standing on the gallery, looking into the store, the witness saw the defendant go up to the deceased with the pistol, and heard him say to the deceased: "You d—d son of a b—h, I am going to kill you." Thereupon the pistol was fired, and the deceased fell to the floor, dead. The witness was looking at the defendant when the shot was fired. The ball struck the deceased in the head, just in front of the left ear. Defendant appeared to the witness to be sober when he fired the shot. He knew the pistol was loaded. He walked from the lower end of the counter, where Johnny Barlow handed him the pistol, with the pistol in his hand, and held close to his side.

Immediately after the shooting the defendant jumped out of the store door and started off, but the witness caught him and demanded the surrender of the pistol. He refused to surrender it, and tried to get away from the witness. Witness wrenched the pistol from him, and got two other men to assist him to tie the defendant. Having done so, they took defendant to Brazoria and lodged him in jail. When witness first caught the defendant, he, defendant, asked: "Who killed Henry Roberson?" Witness replied: "You did, you d—d son of a b—h." It was then that defendant made his effort to get away. This witness stated, also, that the utmost friendship seemed to exist between the deceased and the defendant at all times. They had always seemed friendly, and had never had a previous

difficulty that the witness was aware of. They and the witness lived on the same place.

R. P. Sweeney testified, for the State, that he was and for three years past had been the deputy sheriff of Austin county. The defendant was placed in the Brazoria county jail on or about September 7, 1883. About the middle of September he and two others broke jail and effected their escape. The sheriff of Austin county offered a reward for the defendant. About the thirteenth of October, 1883, the witness was notified to go to De Witt county after the defendant. He went, and received him in the jail at Cuero, since when he has had him in charge. The State closed with this testimony.

Charley Green testified, for the defense, that he knew the defendant well, and knew the deceased up to the time of his death. He knew that the defendant was very easily affected by drink. One drink will almost make him drunk. Liquor flies to his head at once. The witness had been living on the same place with the deceased and the defendant for two years, and during that time was on close, intimate terms with them both. He knew as a fact that the deceased and the defendant were at the time of the killing and long prior thereto had been upon terms of the closest and utmost friendship. Defendant and deceased never had a difficulty or a difference that the witness knew or had ever heard of. They drank together and associated closely. They cursed each other as "d—d sons of b—hs" frequently, meaning nothing by it, and without getting angry or insulted. They, and a great many of the young men of the neighborhood, were in the habit of cursing each other in sport, denouncing each other as "d—d sons of b—hs." These epithets passed current as jokes. Witness had often heard the deceased apply them to the defendant, and often heard the defendant apply them to the deceased.

Defendant is a married man. The deceased was a single man. The two had lived in a house together.

The motion for new trial assailed the charge of the court in several particulars, and the verdict as unsupported by the evidence, especially as to the degree of guilt, if any offense is shown. The motion in arrest of judgment presents the question involved in the opinion.

No brief for appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. This appeal is from a judgment of conviction for murder of the first degree, wherein the penalty is assessed at death.

A motion in arrest of judgment was made by defendant "because," as alleged, "the indictment does not show and does not charge that the defendant did kill 'any reasonable creature in being,' and because said indictment does not charge that Henry Roberson (the deceased) was a person of the human family or race." A similar objection was made to the indictment in Bohannon's case, and this court said: "It has never been held necessary that the indictment should allege that the deceased was 'a human being,' or 'a reasonable creature,' although in the definition of murder one or the other of these descriptions of the deceased are used. To allege the name of the person killed, or that his name is unknown, is a sufficient allegation that the deceased was the subject of murder, as it will be presumed that the indictment is understood according to the import of the common language used therein. (Code Crim. Proc., Art. 425; Penal Code, Art. 10; 2 Bish. Crim. Law, sec. 506; *State* v. *Stanley*, 33 Iowa, 526; *Perryman* v. *The State*, 36 Texas, 321; *Reed* v. *The State*, 16 Ark., 499; 1 Arch. Cr. Pr. and Pl., 784; 1 Whart. Prec., 114.)" *Bohannon* v. *The State*, 14 Texas Court of Appeals, 271.

Under our own decisions, the indictment before us is amply sufficient to charge murder of the first degree. (*Dwyer* v. *The State*, 12 Texas Ct. App., 535; *Peterson* v. *The State*, 12 Texas Ct. App., 650.) The court did not err in overruling the motion in arrest of judgment.

Several exceptions, or rather objections, for no exceptions were taken in fact, are made to the charge of the court, neither of which in our opinion is tenable. We consider the charge an able and most explicit exposition of the law as applicable to all the important, material phases in which the evidence presented the case.

As to the facts, there can be no reasonable doubt of defendant's guilt of murder in the first degree, if the jury attached credibility to the testimony of the witness Flora White; and we see no reason why they should not have done so, for her testimony is unimpeached and uncontradicted. Aside from her testimony, had the verdict been rendered on the other evidence in the record, we would have been compelled to have held that it was amply supported.

The theory of defendant was that the killing was accidental. Whether it was or not was fairly and plainly submitted to the jury, and they were furthermore fully instructed upon the law with regard to drunkenness, in connection with murder. That defendant killed deceased there can be no doubt; that he did so under circumstances evincing preparation and premeditated design, is equally evident. He has had a fair trial, and the judgment condemning him to death for his crime is affirmed.

*Affirmed.*